**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**STEPHEN MONTALTO**                                               **PLAINTIFF**

**VS.**                      **CIVIL ACTION NO. 3:20-CV-822-HTW-LGI**

**WARDEN FRANK SHAW, et al.**                      **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is the *Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies* [62], filed by Defendants Aswandra Bonner, Joni Collins, Christopher Dykes, Miraka Green, Courtnea Howard, Jaburious Jackson, Shericka Nelson, Ashley Ray, Frank Shaw, Edward Westmoreland and Management & Training Corporation. Plaintiff Stephen Montalto filed a response in opposition [66].[1] Also before the Court is *Motion of Defendants Dr. Arnold, Nurse Hobson, and Nurse Cole to Dismiss Claims for Failure to Exhaust Administrative Remedies* [75]. Plaintiff filed a response in opposition [82]. Plaintiff proceeds in this matter *in forma pauperis* and *pro se*. For the reasons discussed below, the Court hereby recommends that the *Motion for Summary Judgment* [62] filed by MDOC Defendants be granted in part and denied in part, without prejudice. As to the *Motion for Dismissal* [75] filed by Medical Defendants, the undersigned recommends that it be granted on the grounds that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), as discussed below.

---

[1] On June 30, 2022, Plaintiff filed his response, entitled *Plaintiff's Response to Defendants' Motion for Summary Dismissal and Request to Hold Defendants in Contempt of Court for Altering Documents, Providing False Statements and Removing Key Evidence from Their Exhibits that Prove the Plaintiff Exhausted His Administrative Remedies*. *See* Doc. [66]. The Court does not specifically address the relief requested herein regarding the allegations and request for contempt, as the Court notes Plaintiff will have an opportunity to pursue this additional claim as litigation progresses in this matter.

**BACKGROUND**

Plaintiff Stephen Montalto ("Plaintiff") is a convicted inmate housed at the East Mississippi Correctional Facility ("EMCF").  On December 28, 2020, Plaintiff filed suit against the Management & Training Corporation as well as numerous Defendants employed by the Mississippi Department of Corrections ("MDOC") and those who work at EMCF, as follows: Aswandra Bonner, Joni Collins, Christopher Dykes, Miraka Green, Courtnea Howard, Jaburious Jackson, Shericka Nelson, Ashley Ray, Warden Frank Shaw, and Edward Westmoreland (collectively, "MDOC Defendants").  Plaintiff also named three other Defendants, Dr. Arnold, Nurse Cole, and Nurse Hobson (collectively, "Medical Defendants").

Plaintiff alleges that Defendants violated his constitutional rights during his incarceration at EMCF over different periods of time, generally between 2018 and 2020.  But Plaintiff specifically draws attention to three separate incidents:  sometime in 2018, April 11, 2020, and November 13, 2020.  Plaintiff further alleges that he has been a victim of sexual abuse and harassment throughout the entirety of the time period referenced.  Doc. [1] at 6.  In sum, and from the face of Plaintiff's complaint, the undersigned notes allegations of the failure to protect Plaintiff from assault and battery, pervasive sexual abuse and harassment, inhumane living conditions while illegally held in lock-down, and the failure to provide adequate medical treatment stemming from several assaults.

Both sets of Defendants moved for relief from this lawsuit, contending that Plaintiff failed to exhaust his available administrative remedies prior to filing his initial complaint.  In support of their motion, MDOC Defendants have submitted the affidavit testimony of Ms. Charlayne Hall, the Administrative Remedies Program ("ARP") Coordinator, along with Plaintiff's lengthy ARP file at EMCF.  *See* Doc. [62-1].  Prior to filing suit on December 28, 2020, Plaintiff submitted

numerous grievances through the ARP system, completing the Two Step Process on a few claims but failing to do so regarding the relevant issues listed in his complaint. *See* Doc. [1]. Both sets of Defendants agree that Plaintiff failed to exhaust his administrative remedies before he filed this action regarding the alleged April 11, 2020, assault. However, Plaintiff repeatedly takes issue with the MDOC Defendants' handling of the grievances he filed, arguing that they failed to properly receive his grievances in the appropriate order to avail Plaintiff of the opportunity to exhaust his available administrative remedies. *Id*. at 25, 27-29.

## STANDARD

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). A genuine issue of material fact exists where a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). When ruling on a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.,* 635 F.3d 734, 736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.2010)).

If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Indeed, "[t]he nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial." *Blanks v. Claiborne*, 2014 WL 1236005, at *2 (S.D. Miss. Mar. 25, 2014) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). In the

absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), Plaintiff's claim must be dismissed if he has failed to exhaust available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "If a prisoner has not exhausted all available administrative remedies, dismissal is appropriate." *Alexander v. Tippah Cnty., Mississippi*, 351 F.3d 626, 630 (5th Cir. 2003). Too, "[i]t is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. E. Mississippi Corr. Facility*, 2013 WL 4833901, at *2 (S.D. Miss. Sept. 11, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). This Court has repeatedly recognized that plaintiffs are required to identify the relevant individual at issue so as to properly place them on notice of the complaint. *See Hayes v. Dunn*, 2016 WL 884654, at *1 (S.D. Miss. Mar. 7, 2016); *see also Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004).

"Proper exhaustion is determined by reference to the state grievance procedures." *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (citing *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)). Pursuant to Miss. Code Ann. § 47-5-801, the MDOC has established a two-step Administrative Remedy Program ("ARP") that prisoners must exhaust prior to filing suit under the PLRA. *Carroll v. Lee*, 2017 WL 2704121, at *3 (N.D. Miss. June 22, 2017). "The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's legal

claims adjudicator within thirty days of the incident." *Id*. If the inmate is dissatisfied with the response, "he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator." *Id.* (citing *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013)).[2] "If the inmate is unsatisfied with that response, he may file suit in state or federal court." *Id.*

"Exhaustion is no longer left to the discretion of the district court but is mandatory." *Woodford*, 548 U.S. at 84. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93 (internal citations omitted). Accordingly, proper exhaustion is required, and an inmate cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84.

## MDOC DEFENDANTS

MDOC Defendants moved for summary judgment on Plaintiff's claims, arguing that he failed to exhaust his administrative remedies as to most of his claims. The Court will address Plaintiff's claims in the sequence presented in his initial complaint [1].

### 1. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *see also Horton v. Cockrell,* 70 F.3d 397, 400–01 (5th Cir.1995). However, not every injury "by one prisoner at the

---

[2] The ARP process is set forth in the MDOC Inmate Handbook, which is available at http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf. The Court may take judicial notice of MDOC's Inmate Handbook. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see, e.g.*, *Smith v. Polk Cnty., Fla.*, 2005 WL 1309910, at 3 (M.D. Fla. May 31, 2005) (taking judicial notice of inmate handbook and grievance procedures stated therein).

hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer,* 511 U.S. at 834. To establish a failure-to-protect claim, Plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that [the Defendants] were deliberately indifferent to [Plaintiff's] need for protection." *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995). "In order to act with deliberate indifference, 'the [Defendants] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Id.* (quoting *Farmer,* 511 U.S. at 837).

Plaintiff alleges that he was assaulted by other inmates on several separate occasions between 2018 and 2020. Specifically, Plaintiff alleges that the officers on duty enticed him to engage in sexual activity and "said something" to the other inmates that led to the assault. Doc. [1] at 10. Regardless, Plaintiff asserts that the officers failed to stop the gangs from assaulting him once the attacks began, and the officers "had knowledge" that their actions would cause harm and endanger Plaintiff. *Id.* at 9. Too, Plaintiff claims he was poisoned by other inmates following certain assaults that occurred during this time period. Each claim will be discussed in turn.

### A.    Assault in 2018

Plaintiff alleges the first assault and battery occurred on Unit 2 Bravo Cell 209 in 2018. *Id.* at 6. In that assault, Plaintiff claims several inmates affiliated with the Vice Lord gang attacked him over a TV dispute. The assault was an alleged "set up" to inflict possible brain damage "to cover up the sexual harassment and money racketeering operation they orchestrated." *Id.* at 11. Plaintiff admitted in his complaint that he did not file a grievance related to this assault, because he wanted to "forgive and give them a chance." *Id.* at 26. During the Omnibus hearing on the issues, Plaintiff reiterated those facts. Therefore, it is undisputed that Plaintiff failed to exhaust

his administrative remedies on any claim related to the assault in 2018, as he never initiated the Two-Step Process available to him.  MDOC Defendants are entitled to summary judgment to warrant dismissal on this basis, regarding the assault in 2018.

### B.    Assault on April 11, 2020

The following incident is riddled with confusion.  On May 9, 2020, Plaintiff submitted his initial grievance through the ARP concerning an attack that allegedly occurred on April 11, 2020. Doc. [62-1] at 52; *see also* Doc. [66].  In the initial grievance, Plaintiff did not mention any MDOC Defendant by name nor accuse any MDOC Defendant of wrongdoing.  *Id*.  After detailing the alleged assault by other inmates, Plaintiff requested a full investigation into the matter, to press charges on everyone involved, for medical to send him to an outside surgeon to repair his ear, for monetary damages, and to be released from prison immediately.  *Id*. at 53.  Richard Pennington, the Statewide ARP Director, rejected this grievance on June 12, 2020, because the relief sought was beyond the ARP's authority to grant.  *Id*.  Specifically, the ARP does not have the authority to file criminal charges, award monetary damages, or release an inmate from prison.  *Id*. at 4. Defendants assert Plaintiff signed for receipt of this rejection on June 15, 2020.  *Id*.  Plaintiff agrees that he received notice of the rejection on that day, but there is no document proving his signature from either party.  *See* Doc. [1] at 28; *see also* Doc. [66].  Defendants assert Plaintiff failed to file a corrected grievance seeking proper relief.  Doc. [62-1] at 4.  Examples of such relief that Plaintiff could have requested include: an investigation to determine whether MDOC policy had been violated, a request to "red tag other inmates, request that he be moved, or request for necessary medical attention.  *Id*.  Defendants claim Plaintiff did not pursue any such route, and therefore the grievance was subsequently closed, without Plaintiff having completed the necessary ARP process.  *Id*; *see also* [63] at 9.  Accordingly, Defendants believe they are entitled to summary

judgment here, because Plaintiff failed to exhaust his available remedies regarding this alleged assault.

Yet, Plaintiff claims to *have* submitted a corrected grievance on June 16, 2020, well within the five-day limit required by MDOC policy. Doc. [1] at 28; *see also* Doc. [66]. Indeed, Plaintiff attached a copy of the corrected grievance as an exhibit to his initial complaint and to his response in opposition to Defendants' motion for summary judgment, which includes the signature stamp of receipt by the MDOC Defendants. *See* Doc. [1-1] at 6; *see also* Doc. [66-1] at 7-10. In this corrected grievance, Plaintiff specifically names Officers Gracie[3] and Sergeant Vaughn (Defendant Bonner). Doc. [1-1] at 7; *see also* Doc. [66-1] at 9. Plaintiff alleges both individuals falsely told gang members that he exposed himself, which allegedly led to the subsequent assault. *Id*. Plaintiff further alleges these officers did nothing to prevent the alleged assault or to stop it before it became violent. *Id*. Plaintiff also limited his relief requested to include a thorough investigation of the assault and to receive medical treatment for injuries he sustained in the attack. *Id*. at 8; *see also* Doc. [66-1] at 10.

The Court draws issue as to whether Plaintiff submitted a corrected grievance, and if so, whether the MDOC Defendants properly handled its receipt. As noted previously, the corrected grievance provided by Plaintiff includes the stamp of receipt. Plaintiff provided documentation that the "corrected grievance" was returned to him because he previously submitted an ARP concerning the same issue. *Id*. at 12. The returned, corrected grievance was obviously stamped by the ARP program but failed to note whether the grievance was accepted or rejected. Instead, Plaintiff provided a letter sent from the ARP Coordinator who reasoned that "since the matter has already been *accepted*, this particular ["corrected grievance"] is being returned to you and will not

---

[3] Officer Gracie has not been served process in this case.

be processed." *Id.* (emphasis added). Yet, it has already been proven that the grievance filed on May 9, 2020, was *rejected*. If Plaintiff filed a "corrected grievance" on June 16, 2020 as he alleges, it should not have been returned to him, as his prior grievance had been rejected because the relief sought was beyond the ARP's authority to grant.

Perhaps the confusion lies in the processing of other grievances pertaining to separate alleged attacks filed by Plaintiff. Plaintiff submitted evidence of a grievance filed on May 16, 2020, relating to an alleged attack on May 7, 2020, wherein he claims he was poisoned. *Id.* at 17. Plaintiff argues that the incident was mishandled by staff. *Id.* Apparently, this grievance was rejected, though the record is not conspicuous. Defendants fail to mention this grievance in the affidavit of Ms. Hall, the ARP Coordinator. Indeed, Defendants' timeline demonstrates the initial grievance as filed on May 9, 2020, which related to the alleged attack on April 11, 2020. The next grievance discussed by Defendants was filed on May 30, 2020 – completely ignoring the grievance filed on May 16, 2020.

On May 30, 2020, Plaintiff filed a grievance that requested an investigation into an alleged assault by gang members on May 7, 2020, the same assault mentioned in Plaintiff's May 16, 2020 grievance. Doc. [62-1] at 4. The grievance was accepted but Plaintiff rejected the First Step Response and wished to proceed to Step Two, arguing that this grievance should not have been processed before his corrected grievance was considered regarding the April 11, 2020 attack. *Id.* at 58. This grievance was ultimately rejected by Warden Shaw during the Second Step because the investigation was already complete, and Plaintiff had filed "several grievances" claiming he was assaulted. *Id.* at 59. Thus, Plaintiff exhausted his administrative remedies pertaining to the alleged attack that occurred on May 7, 2020.

Notably, there is no mention by Defendants of the return of Plaintiff's "corrected grievance." Instead, in his complaint, Plaintiff asserts that the ARP Department chose to accept in its place this "similar but different ARP [that Plaintiff] filed afterwards on May 30, 2020 – before the process of the previous request was exhausted completely." Doc. [1-1] at 4. Plaintiff alleges that he directed the ARP department to "exhaust" his "corrected complaint" before moving onto any "ARPs" filed after the original grievance submitted on May 9, 2020. *Id.* As proof, Plaintiff attaches as an exhibit to his response in opposition [66], a copy of a "cover letter" to his corrected ARP, dated June 16, 2020 and addressed to one Mrs. Hall requesting, "Will you please accept my corrected ARP Complaint and process it before the others I submitted after this one of 5/9/20?" Doc. [66-1] at 7. *See also* Doc. [66-1] 11-15 (additional letters addressed to ARP Director, wherein Plaintiff addresses issue). While the letter indicates Plaintiff believed his subsequent ARPs were being handled before the ARP complaint he originally submitted on May 9, 2020 regarding the alleged assault on April 11, 2020, it must be pointed out that the "cover letter" is not stamped as received by Mrs. Hall or any other EMCF staff member. *Id.*

In sum, Plaintiff argues that Defendants failed to adhere to MDOC Policy 20-08-01, specifically lines 153-154 regarding the ARP dated May 9, 2020. *Id.* at 5. Rather than limiting the scope of review to lines 153-154, it is best to read the relevant paragraph in its entirety. Lines 150-154 of MDOC Policy 20-08-01 provide:

> Notice of the initial acceptation or rejection of the request will be provided to the offender. If the MDOC ARP Director accepts the complaint, he/she or the appropriate person will respond to the complaint. If he/she rejects the complaint, he/she will so advise the offender in writing. The offender will then have five days from the date the rejection memo is received to appeal this rejection through channels or to resubmit his corrected complaint (beginning with the First Step).

Doc. [62-2] at 4. It appears that Plaintiff submitted his corrected grievance within five days and satisfied the rule. However, this grievance was returned to Plaintiff because he was told that he

had a previously *accepted* ARP concerning the *same* alleged issue.  Plaintiff continued to argue for review of the corrected grievance rather than subsequent grievances filed in unrelated matters. But Plaintiff's persistent pursuit of review of the returned corrected grievance proved futile.  By sitting on that argument, Plaintiff failed to exhaust his administrative remedies, because there was never a completion of the Two-Step Process according to Defendants.

But what was Plaintiff to do after receiving notice of the return of his corrected grievance? Plaintiff's ability to submit a new complaint pertaining to the April 11, 2020 attack is all but prohibited.  If Plaintiff sought review of that incident, by starting over with a new grievance, he would be filing a new grievance after the allowed thirty days had passed since the alleged incident, which would be barred.  It appears Defendants have confused the initial grievance regarding the April 11, 2020 assault with a separate grievance filed on May 30, 2020, which related to a different assault that allegedly occurred on May 7, 2020.  This confusion led to the return of Plaintiff's corrected grievance.  Because it was not accepted, the Two-Step Process could not have been completed.

On these facts, there appears to be a genuine dispute of fact as to whether Plaintiff actually submitted a corrected grievance.  More problematically, it appears MDOC Defendants have not provided a record that demonstrates adequate record keeping.  From the documents submitted, Plaintiff has raised a plausible claim that demonstrates his efforts to comply with the rules appropriately.  Indeed, Defendants have made no mention of the return of Plaintiff's corrected grievance but appear to misconstrue the subject matter to which it related.  Worse, Defendants have entirely failed to recognize the grievance filed on May 16, 2020, which appears to cause confusion regarding Plaintiff's grievance filed on May 9, 2020.  There further appears to be a dispute as to whether the Defendants impeded Plaintiff from filing his corrected grievance so as to

11

attempt to exhaust his available administrative remedies.  Accordingly, MDOC Defendants should not be entitled to summary judgment on this claim.

### C.    Assault on November 13, 2020

Plaintiff also alleges that he was assaulted by gang members from the Vice Lords and Latin Kings.  Doc. [1] at 9.  It was during this assault that Plaintiff was hit with a lock that "fractured [his] head, dislodged and compression fractured [his] left cheekbone and swelled up [his] left ear." *Id*.  After the attack, Plaintiff recalls that Sergeant Gully[4] took him to see medical.  *Id*.  Plaintiff's main contention is that Defendants Price, Warden Shaw, and the security and gang investigation department were "negligent and deliberately indifferent to the threat they caused to [his] life and the harm they caused to [his] mind and body."  *Id*. at 10.  Plaintiff supports this claim by arguing that Defendants forced him to live in the "gangs [*sic*] unit," even after he was previously assaulted in 2018 by the same Vice Lord gang.  *Id*.  Indeed, Plaintiff alleges that he was removed from Unit 4 Delta (a safe non-gang ran zone) to 1 Alpha (a dangerous gang run zone) after he "signed a protective custody form which stated that [he] only agreed (and felt safe) to live on 4 Delta."  *Id*. It does not appear that Plaintiff provided any information in his initial complaint as to whether he filed a grievance through the ARP regarding this incident.

Defendants, however, note that Plaintiff submitted a grievance through the ARP regarding the assault on November 13, 2020. Doc. [62-1] at 5.  On December 7, 2020, Plaintiff submitted this grievance and sought emergency medical treatment from injuries sustained from this assault. *Id*. at 69.  Notably, Plaintiff did not assert a failure to protect claim against any named MDOC Defendant.  The only officer mentioned by name was Sergeant Gully, who took Plaintiff to medical after the attack.  *Id*.  The First Step Response was completed on March 5, 2021.  *Id*. at 70.  Plaintiff

---

[4] It does not appear from the record that Sergeant Gully is a named party in this suit.

was unsatisfied with the response and appealed to the Second Step, completing the ARP process for this grievance on March 31, 2021. *Id*. at 71. Problematically for Plaintiff, he filed the instant suit on December 28, 2020, well before receiving a First Step Response on March 5, 2021. Further, Plaintiff did not name any MDOC Defendant in the grievance nor accuse them of any wrongdoing. On this basis, MDOC Defendants are entitled to summary judgment regarding the incident on November 13, 2020.

### D.    Poisoned by Other Inmates Between 2019-2020

Plaintiff claims he was poisoned four times while serving in "lock-down" on 5 Bravo, which began on September 17, 2019; he also claims he was poisoned five times during the first week of May 2020, when he was on 2 Delta. Doc. [1] at 6. In his complaint, Plaintiff alleges that he was fed four poisoned or contaminated food trays but fails to mention who poisoned the food. *Id*. at 14. There is nothing provided in the record that demonstrates Plaintiff filed any grievance through ARP on this issue. On June 2, 2020, Plaintiff filed a grievance wherein he complained another inmate poisoned his drink on May 7, 2020. Doc. [62-1] at 65. Therein, Plaintiff claims he informed Unit Manager Nelson that he had been harmed by a Vice Lord who "put poison in [his] drink." *Id*. Plaintiff requested a full investigation and that the poisoned drink be tested. *Id*. This grievance was rejected because it was beyond the power of the ARP to grant, specifically regarding the inability to test whether the drink was poisoned. *Id*. at 63. Defendants claim that Plaintiff signed for the rejection notice on August 5, 2020, but he did not file a corrected grievance on the matter. *Id*. at 4. Accordingly, the grievance was closed without Plaintiff completing the ARP process. *Id*. Because Plaintiff failed to exhaust his administrative remedies regarding the allegation of poisoning, and because he failed to name any Defendant in the only grievance filed

on the subject, MDOC Defendants are entitled to summary judgment warranting dismissal on these claims.

## 2. Sexual Abuse and Harassment

Plaintiff claims that several officers have violated his constitutional rights under the Eighth and Fourteenth Amendments.  Doc. [1] at 11.  Indeed, Plaintiff alleges he has been subject to sexual abuse and harassment since 2017.  *Id*. at 6.  Notably, "[v]erbal sexual harassment does not violate a detainee or inmate's constitutional rights."  *Jane Doe 5 v. City of Haltom City*, 106 F. App'x 906, 908 (5th Cir. 2004); *see also Leflore v. Carroll-Montgomery RCF*, 2014 WL 1276494, at *3 (N.D. Miss. Mar. 27, 2014).

Plaintiff alleges female officers Gracie, Bonner, and "many other EMCF guards and administrators have been pressuring and encourage [him] relentlessly to engage with them in sexual activity. . . ."  *Id*. at 11.  If Plaintiff failed to carry out the requests, he alleges the officers would cause physical attacks to be carried out against him by gang members, and he would be subject to a rule violation.  *Id*.  Plaintiff also asserts that the guards conspired with inmate gang members in a "ruse/scheme" to try and force Plaintiff to engage in inappropriate sexual activity or fist fights.  *Id*. at 12.  Such activities subjected Plaintiff to rule violations, which forced his transfer to a different unit at EMCF.  *Id*.  Plaintiff alleges that he helped Unit 2 Alpha remain "drug free for over 10 years."  *Id*.  Plaintiff suggests the purpose of the "ruse/scheme" was to have him removed from the "drug free zone" so that the officers and inmates "could make more money.  The officers could then supply the gangs with more drugs and customers to sell them to once [he] was no longer around."  *Id*.

There is no evidence from the documents submitted at this stage that demonstrate Plaintiff ever filed a grievance against any female officer for the alleged sexual harassment and abuse he

now claims. Instead, the record reveals that Plaintiff filed at least four separate grievances in which he appealed different Rule Violation Reports ("RVR") for which he was found guilty of inappropriate sexual activity, namely indecent exposure (masturbation). *See* Doc. [62-1] at 2-3; 11-35. It appears that Plaintiff failed to exhaust his available remedies on each claim. Further, these grievances fail to allege sexual harassment or abuse as to any named Defendant in this case. Accordingly, MDOC Defendants are entitled to summary judgment on Plaintiff's claims of sexual harassment and abuse by female officers at EMCF.

### 3. Illegally Held in Segregation and Inhumane Living Conditions

The Court notes that the Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). The Eighth Amendment imposes duties on prison officials, and requires that they provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions. *Helling*, 509 U.S. at 33.

A prison condition constitutes an Eighth Amendment violation only when two requirements are met. First, there is an objective requirement that the alleged condition be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities," such as some basic need. Second, the prison official must have been deliberately indifferent to the inmate's health or safety. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (footnote

omitted).  The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  Accordingly, a prison official's failure to eliminate a substantial risk of harm which he should have perceived, but in fact did not perceive, cannot support an imposition of liability under the Eighth Amendment.  *Id.* at 838.

Further, "[t]o invoke the protections of the Due Process Clause, Plaintiff must have a protected liberty interest at stake."  *Gray v. King*, 2019 WL 3756482, at *2 (S.D. Miss.  May 17, 2019).  A constitutionally protected liberty interest is "limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Long-term segregation is not considered an "atypical and significant" hardship of prison life.  *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (finding that administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest).  Generally, changes in custody status or confinement in segregation do not implicate a liberty interest.  *See Nathan v. Hancock*, 477 F. App'x. 197, 198-99 (5th Cir. 2012).

On or about December 13, 2019, Plaintiff filed a grievance complaining that he had been improperly held in segregation and subjected to inhumane treatment.  Doc. [62-1] at 3. Notably, this grievance was filed during Plaintiff's first episode of isolation that spanned over three and a half months.  *See* Doc. [1] at 14.  The initial grievance was accepted by the ARP Director on February 17, 2020.  Doc. [62-1] at 36.  In the grievance, Plaintiff complained that he was placed

in a dark cell with no light. *Id*. at 39. Plaintiff alleged he was poisoned four times during this period of isolation as well. *Id*. Further, Plaintiff complained that a faulty sprinkler system had saturated his belongings, including his mattress, on three separate occasions for "thirty minutes" at a time. *Id*. Plaintiff alleged that the sporadic flooding of his cell resulted in the creation of black mold. *Id*. Forced to breathe in the black mold, Plaintiff complained of bruises and sores that developed upon his body. *Id*. However, Plaintiff noted said bruises and sores could have also been the result of "bad food" he was provided daily. *Id*. After meeting with one Stephanie Patrick, Plaintiff decided to cancel this particular grievance prior to receiving a First Step response from staff. *Id*. at 42. Therefore, it cannot be said that Plaintiff exhausted his available administrative remedies on this claim.

Not only did Plaintiff fail to exhaust his administrative remedies before filing his claim, but he also failed to carry the grievance process through to its conclusion. *See Holloway v. Hall*, 2022 WL 822177, at *5 (S.D. Miss. Feb. 4, 2022) (citing *Walker v. E. Mississippi Corr. Facility*, 2013 WL 4833901, at *2 (S.D. Miss. Sept. 11, 2013)). Plaintiff's choice to cancel this particular grievance prior to receiving a First Step response resulted in his failure to complete the Two Step Process. Although Plaintiff asserted a second incident of isolation, which supposedly lasted over two months during which Plaintiff was subjected to inhumane living conditions, there is nothing provided in the record that demonstrates Plaintiff ever filed a grievance on this matter. Accordingly, Defendants are entitled to summary judgment on the basis of Plaintiff's failure to exhaust administrative remedies with regard to his claims of inhumane living conditions.

## **MEDICAL DEFENDANTS**

Plaintiff alleges Defendants Dr. Arnold, Nurse Cole, and Nurse Hobson failed to provide constitutionally adequate medical treatment for the injuries he sustained following the alleged

assaults that occurred sometime in 2018, on April 11, 2020, and on November 13, 2020. These Medical Defendants have moved for the dismissal of Plaintiff's claims of inadequate medical treatment on the grounds that Plaintiff failed to exhaust his available administrative remedies before filing this action. *See* Doc. [75]. Plaintiff has filed a response in opposition [82]. The Court considers the submissions herein.

### 1. Inadequate Medical Care

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that the defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantees prisoners "only adequate, *not* optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *11 (E.D. La. Apr. 4, 2012) (emphasis in original) (citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) ("Deliberate indifference exists wholly independent of an optimal standard of care.")). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Disagreements about whether an inmate should be referred to a specialist as part of ongoing treatment does not constitute deliberate indifference. *See Alfred v. Texas Dep't of Criminal Justice*, 80 F. App'x. 926, 927-28 (5th Cir. 2003).

A.    **Assault in 2018**

As previously discussed, Plaintiff alleges he was assaulted in Unit 2 Bravo Cell 209 sometime in 2018.  Doc. [1] at 6.  Plaintiff claims that he was not given any medical treatment from the "EMCF staff" after this assault.  *Id*. at 19.  But it is undisputed that Plaintiff failed to file any grievance following this assault.  Indeed, Plaintiff admitted in his complaint that he did not file a grievance related to this attack because he wanted to "forgive and give them a chance."  *Id*. at 26.  Also, during the Omnibus hearing on the issues, Plaintiff reiterated those facts. Accordingly, there is no submission of any grievance through ARP alleging the denial of medical care following this alleged assault.  Thus, Plaintiff failed to exhaust his administrative remedies on any claim related to the denial of medical care following the alleged attack that occurred sometime in 2018, as he never initiated the Two-Step Process available to him.  Medical Defendants are entitled to summary judgment on the allegation regarding the denial of medical care associated with the alleged assault from 2018.

B.    **Assault on April 11, 2020**

Plaintiff also claims that he did not receive "any help during or after" the assault that occurred on April 11, 2020.  *Id*. at 19.  Plaintiff alleges he was not taken to the hospital to have his ear re-attached and did not have any x-rays taken until "months later."  *Id*.  After the x-rays were taken, Plaintiff alleges that Dr. Arnold claimed in his x-ray reports that there was no damage, fractures, or breaks.  *Id*.  Plaintiff claims that Nurse Hobson later evaluated him for a hernia surgery required as a result of the abdominal injuries he sustained following this attack.  Doc. [11] at 7. Plaintiff also claims Nurse Hobson delayed this surgery after he was assaulted again by the gang. *Id*. at 8.  There is no specific allegation towards Nurse Cole regarding Plaintiff's medical treatment.

As discussed at length previously, Plaintiff filed a grievance following the assault that occurred on April 11, 2020. In the initial grievance, Plaintiff did not name any Medical Defendant. Doc. [62-1] at 50. Plaintiff only mentions that he sought medical attention but was interrogated by the gang as a result. *Id.* at 52; *see also* Doc. [66-1] at 8-10. Plaintiff only requested for medical to send him to an outside specialist to repair his ear. *Id.* at 53. Notably, Plaintiff never claims any wrongdoing on behalf of Dr. Arnold, Nurse Cole, or Nurse Hobson. This grievance was rejected as it sought relief beyond the power of the ARP to grant. *Id.* at 50. Defendants allege Plaintiff never filed a corrected grievance nor carried the grievance through to its completion. In short, Plaintiff failed to exhaust his available administrative remedies.

While the Court notes some confusion as to this issue regarding whether a corrected grievance was ever filed, the document Plaintiff alleges to be his corrected grievance still fails to mention any grievance towards the named Medical Defendants in this case. *See* Doc. [1-1] at 6; *see also* Doc. [66-1] at 7-10. This Court has repeatedly recognized that plaintiffs must identify the relevant individual at issue so as to properly place them on notice of the complaint. *See Hayes*, 2016 WL 884654, at *1; *see also Johnson*, 385 F.3d 503. Here, Plaintiff failed to satisfy this requirement on these allegations. Plaintiff failed to seek an administrative remedy with respect to the alleged denial of adequate medical treatment for injuries he sustained from the second assault. Medical Defendants are entitled to summary judgment of this claim on this basis.

### C.    Assault on November 13, 2020

Plaintiff alleges in his complaint that he did not receive any emergency medical treatment "during or immediately after" his third assault. Doc. [1] at 20. Plaintiff admits that x-rays were taken "three days" after the assault but that medical failed to take him to the hospital even though he believed there was a fracture on his forehead. *Id.* Indeed, Plaintiff claims that "medical" told

him through a "nurse" that the x-rays were negative for any break or fracture. *Id.* Plaintiff alleges that Dr. Arnold never conducted a follow up visit to go over the x-ray results either. *Id.*

From the record, it has been noted that Plaintiff filed a grievance following this incident on December 7, 2020. Doc. [62-1] at 5; 69. In Plaintiff's initial grievance, he claimed that "medical" did not give him any emergency or effective medical treatment following the assault. *Id.* at 69. The First Step Response was completed on March 5, 2021. *Id.* at 70. Plaintiff appealed to the second step and Dr. Arnold completed the Second Step Response on March 31, 2021. *Id.* at 5; 71. Accordingly, Plaintiff completed the ARP process for this grievance. But Plaintiff filed the instant suit on December 28, 2020, well before receiving the First Step Response on this allegation on March 5, 2021.

"Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement – the grievance process must be carried through its conclusion *before* suit can be filed under the Prison Litigation Reform Act." *De LaCruz v. Rankin Cnty.*, 2021 WL 3912541, at *2 (S.D. Miss. Aug. 13, 2021) (emphasis added). Indeed, "[t]he grievance process must be completed *prior* to filing suit in federal court." *Smith v. Michael*, 2022 WL 1238624, at *2 (S.D. Miss. Apr. 6, 2022) (emphasis in original). Here, Plaintiff did not wait until the completion of the ARP process before filing the instant suit. Plaintiff prematurely filed the instant action without completing the ARP process. As such, Medical Defendants are entitled to summary judgment to warrant dismissal for Plaintiff's failure to exhaust administrative remedies.

## RECOMMENDATION

The *Motion for Summary Judgment* [62] filed by Defendants Aswandra Bonner, Joni Collins, Christopher Dykes, Miraka Green, Courtnea Howard, Jaburious Jackson, Shericka

Nelson, Ashley Ray, Frank Shaw, Edward Westmoreland, and Management & Training Corporation should be GRANTED with respect to all claims except for the allegations raised relating to the April 11, 2020, assault. Plaintiff should be able to further dispute this claim due to the genuine issues of material fact noted in this recommendation.

The *Motion to Dismiss* [75] filed by Defendants Dr. Arnold, Nurse Cole, and Nurse Hobson should be granted with respect to all claims.

## <u>Notice of Right to Object</u>

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party may serve and file written objections to the proposed findings and recommendations within fourteen days after being served a copy of this recommendation. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected, except under grounds of plain error. *Douglass v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1428-29* (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

SO ORDERED this the 6th day of January, 2023.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE