# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**STEPHEN MONTALTO**                                                                                     **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO. 3:20-CV-822-HTW-LGI**

**ASWANDRA BONNER**                                                         **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation on *Defendant Aswandra Bonner's Motion for Summary Judgment* [111], filed on July 21, 2023. On August 14, 2023, Plaintiff Stephen Montalto filed a Response [113] in opposition to the motion. Having considered the submissions, the record, and relevant law, the undersigned recommends that the motion for summary judgment [111] be granted, as discussed below.

**I.    Facts and Relevant Procedural History**

Plaintiff Stephen Montalto ("Plaintiff"), a postconviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), brought this case, *pro se* and *in forma pauperis*, using a form available to prisoners for filing complaints for violating civil rights, pursuant to 42 U.S.C. § 1983. On December 28, 2020, Plaintiff filed suit against MDOC, East Mississippi Correctional Facility ("EMCF"), and thirteen MDOC and EMCF employees.[1] Plaintiff's complete allegations are set forth in his Complaint and were augmented by his sworn

---

[1] Plaintiff's lawsuit extended to the following EMCF employees: Aswandra Bonner, Joni Collins, Christopher Dykes, Miraka Green, Courtnea Howard, Jaburious Jackson, Shericka Nelson, Ashley Ray, Warden Frank Shaw, and Edward Westmoreland, collectively, the "MDOC Defendants." *See* Report and Recommendations [85]. Plaintiff also named three other Defendants in his lawsuit, Dr. Arnold, Nurse Cole, and Nurse Hobson, collectively, "Medical Defendants." *Id.*; *see also* Complaint [1]; *see also* Orders [10], [14] (adding Defendants to the lawsuit); *see also* Order [16] (substituting MTC for EMCF).

1

testimony at a *Spears*[2] hearing before the United States Magistrate Judge, on October 28, 2022. *See* Docs. [1], [9], [11], and [13]. On February 27, 2023, the Court adopted the undersigned's Report and Recommendations [85] to dismiss twelve of the thirteen defendants based on Plaintiff's failure to exhaust his available administrative remedies before suing over his claims. *See* Order Adopting Report and Recommendations [95], granting in part and denying in part the MDOC Defendants' Motion for Summary Judgment and granting *in toto* the Medical Defendants' Motion to Dismiss.

Plaintiff was incarcerated at EMCF when the allegations giving rise to this lawsuit occurred. He alleges constitution violations for failure to protect and denial of medical care. According to Plaintiff, on April 11, 2020, "Officer Grace or Gracie"[3] and Sergeant Vaughn (Defendant Aswandra Bonner) set him up to be attacked by other inmates. Doc. [1-1] at 7-8; *see also* Doc. [113] at 2. He alleges Aswandra Bonner (hereinafter "Defendant" or "Bonner") falsely informed gang members that he exposed himself, which allegedly led to him being assaulted by Vice Lord gang members. Doc. [1] at 7-9. He claims several female officers on duty enticed him to engage in sexual activity (i.e., masturbation) before Bonner "said something" to the other inmates, which led to the assault. Doc. [1] at 10. Plaintiff further alleges these officers failed to prevent the alleged assault or to stop it before it became violent. *Id*. at 7. After he was assaulted, he claims he was denied medical treatment for the injuries he suffered. *Id*. Plaintiff claims Defendant "had knowledge" that her actions would cause harm and endanger Plaintiff. *Id*. at 9.

Defendant moves for summary judgment, arguing that Plaintiff has no evidence to support his claims. Doc. [112] at 4. She contends Plaintiff's claims against her are based on his own speculation and conjecture that Defendant "said anything to the gang members." *Id*. at 4, 6.

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see* Minute Entry, dated 10/28/2022.
[3] "Gracie" was later identified as Officer Brittany Grace, and she was never served with process.

Defendant denies this allegation and asserts that she "never told the inmates that Plaintiff exposed himself, [that] she had no involvement in the alleged [April 11, 2020] assault, and [that] she had no knowledge nor warning that an assault would take place." *Id*. at 5; *see also* Doc. [111-2], Declaration of Aswandra Bonner. Defendant also asserts that she is entitled to summary judgment, because Plaintiff has failed to plead facts to prove that she acted with deliberate indifference, that she knew that Plaintiff faced a substantial risk of serious bodily harm, or that she disregarded the alleged risk of harm. Defendant also argues that Plaintiff's claims are "fanciful, fantastic, and delusional," and therefore they lack an arguable basis in fact and should be dismissed. *Id*. at 6-7. Finally, Defendant argues Plaintiff did not sustain a serious injury in the alleged assault. *Id*. at 7. Defendant points to Plaintiff's own medical records to show that he did not sustain the alleged injuries for which he claims he was denied medical treatment. *Id*. According to Plaintiff's medical records, "Plaintiff told the nursing staff that he injured his left ear when he fell out of bed." *Id*.; Doc. [111-1], EMCF Medical Record, dated April 27, 2020, attached as Exh. C.

      Plaintiff opposes Defendant's motion. Doc. [113]. He refutes Defendant's claims that his allegations are merely speculation and conjecture. *Id*. Plaintiff states evidence – surveillance cameras – would show that Defendant "was seen . . . talking to gang affiliated inmates shortly before the plaintiff was assaulted[.]" *Id*. at 2. Thus, he argues this evidence is more than speculation. *Id*. In his response, Plaintiff reasserts his "rights to be protected and treated while under Officer Bonner[']s . . . care. *Id*. He contends Bonner's actions went beyond deliberate indifference and/or negligence, and he argues she had a duty to protect him and a "legal responsibility to intervene" in the assault. *Id*. at 2-4. He maintains that Defendant was on duty but failed to provide protection or any assistance afterward. *Id*. at 4. He also denies that his claims are filled with fantastical allegations. *Id*. at 6.

**II.     Standard**

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). The Court must view the evidence in the light most favorable to the non-moving party. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is appropriate "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). Without proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, Civ. Action No. 5:03-cv-241-BN, 2005 U.S. Dist. LEXIS 43286, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991), *cert. denied*, 503 U.S. 987, 112 S. Ct. 1675, 118 L. Ed. 2d 393 (1992). If the moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the

non-moving party to come forward with evidence that creates a genuine issue for trial. *Celotex*, 477 U.S. at 330.

### III. Analysis

#### a. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *see also Horton v. Cockrell,* 70 F.3d 397, 400–01 (5th Cir.1995). However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer,* 511 U.S. at 834. To establish a failure-to-protect claim, Plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that [the Defendants] were deliberately indifferent to [Plaintiff's] need for protection." *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995). "In order to act with deliberate indifference, 'the [Defendants] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Id.* (quoting *Farmer,* 511 U.S. at 837). A prison official must have a sufficiently culpable state of mind, so as to be one of deliberate indifference to the inmate's health or safety. *Williams v. Hampton,* 797 F.3d 276, 280 (5th Cir. 2015) (citations omitted).

The standard to be used in Eighth Amendment cases is one of *subjective* deliberate indifference, as used in criminal law, not an objective standard as used in civil law. *Williams*, 797 F.3d at 281 (citations omitted). The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

> aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Accordingly, a prison official's failure to eliminate a substantial risk of harm which he should have perceived, but in fact did not perceive, cannot support an imposition of liability under the Eighth Amendment. *Id.* at 838.

The Court finds that Plaintiff has failed to establish a failure-to-protect claim against Bonner. Plaintiff has offered no evidence in support of his claims that Defendant aided in the alleged attack on him. Despite the allegations in his Complaint and supplemental filings, Plaintiff provided the following testimony at the *Spears* hearing.

> Q. Why did you file a lawsuit against Ms. Bonner?
>
> A. Because I **believe** she was involved -- **her and Officer Grace, or one or the other or both**, were involved in telling the Vice Lords that I did something that I didn't do or was about to do or thought about doing but chose not to do.

Doc. [110] at 28:9-13; Omnibus Hearing Transcript. Emphasis added.

> . . .
>
> A. So she -- **her or Officer Grace tipped them off**. They took matters into their own hands. And then they didn't do anything to stop it, and they didn't take me to medical after it happened.
>
> Q. Does that cover everything as to why you filed the lawsuit against Bonner? Is that everything?
>
> A. **I'm not sure if that's everything**, but that's a part of it.

*Id.* at 29:12-19. Emphasis added.

Plaintiff's testimony contradicts his pleadings, as he did not testify with certainty that it was Defendant who allegedly "set him up" or told the gang members that he exposed himself. Twice, he stated that it was Bonner *or* Officer Grace that told the Vice Lords. Such uncertainly fails to satisfy the prongs of deliberate indifference. Further, in his Response [113] to Defendant's motion,

6

Plaintiff notes that surveillance cameras would have captured Defendant's alleged interactions with the gang members. Yet upon review of the docket, it does not appear that Plaintiff has requested any surveillance camera footage or made any discovery requests.[4] Thus, it is unclear whether surveillance footage of the alleged incident exists.

Plaintiff has not shown that Defendant knew that a substantial risk of serious harm existed, such that the Defendant acted with deliberate indifference to his health or safety. Nor has Plaintiff provided evidence that Defendant was reckless. Defendant is entitled to summary judgment on this claim.

### b. Denial of Medical Treatment

The Court also finds that Plaintiff has failed to show that he sustained a serious injury as a result of the alleged April 11, 2020 assault. To prevail on a claim of deliberate denial of medical care, a plaintiff must show that the defendant had "subjective knowledge of a substantial risk of serious medical harm" and was deliberately indifferent in disregarding that risk. *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The Fifth Circuit has held that a plaintiff alleging such a claim must "establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). A plaintiff "must show not only that the defendants' actions in failing to provide medical attention . . . were objectively unreasonable, but also that defendants intended the consequence of those actions." *Id*.

Though Plaintiff claims that he sustained serious injuries after he was attacked by the gang members on April 11, 2020, his testimony tells another story.

---

[4] Although Plaintiff references surveillance footage on his Exhibit List, he does not include surveillance footage related to these claims. *See* Doc. [80]

Q. All right. Let's go to the April 2020 -- April 11, 2020, and if I understand what you said, you were afraid to go to medical, but eventually you did do -- after several days, you did do a medical request?

A. Yes. It was — it was --

Q. Yes or no?

A. Yes. It was yes. I did a medical request, and instead of them bringing me to medical, they brought the nurses to the zone to tip off the gang members that I had wrote a medical request about it, because they were trying to keep me from going to medical.

Q. Do you recall telling the nurse who saw you after that request that you had injured your ear when you fell off your rack? I guess that's your bed, right?

A. Yes. I told her that because the gang members were spotting to see when I was going to medical. And they sent one of their affiliates named Gomez, who was with a similar gang, to go to sick call the same time I went, and he was on the -- he was in the inner office, and I was in the same office room with him within earshot. So I -- and I also was trying to keep down. I said that I fell off the rack, because he was right there to be able to listen to what they call in prison "an ear hustle," to spy. These people are all over everywhere, constantly gathering information, communicating with one another. So I didn't have an option. I was trying to keep -- because I had to go back to that zone, and the nurses already tipped the gang members off that I was going to medical, because they were on the zone.

Q. So the injury to your ear occurred in that April 11, 2020, assault; is that what you're saying?

A. The injury?

Q. To your ear. To the outer part of your ear.

A. I believe — I believe that was April 11th.

Q. All right. Now, let me ask you about that. Is that – other than cosmetic, you don't like the way it looks. How does it affect you, if at all?

A. I believe – I believe it has affected – just like I put in my paperwork, I believe it has affected me sexually, because I can't even achieve a healthy erection at this point,

Q. So the injury to your ear occurred in that April 11, 2020, assault; is that what you're saying?

A. The injury?

8

> Q. To your ear. To the outer part of your ear.
>
> A. I believe — I believe that was April 11th.
>
> Q. All right. *Now*, let me ask you about that. Is that – other than cosmetic, you don't like the way it looks.
>
> A. A. I believe -- I believe it has affected -- just like I put in my paperwork, I believe it has affected me sexually, because I can't even achieve a healthy erection at this point,

Doc. [110]: at 47:8-49:22.

Plaintiff acknowledges that he submitted a "sick call" form several days after the alleged incident, where he requested care for an injury to his ear. A review of Plaintiff's medical records reveals that on April 24, 2020, EMCF's nursing staff received the sick call, and on April 27, 2020, Plaintiff was seen by medical staff. Doc. [111-3]. According to the medical note, Plaintiff "report[ed] falling from top bunk two weeks ago and hitting his left ear on a chair. He did not realize how much damage he had done to the left ear. . . ." *Id*. Notably, when questioned as to why he told medical staff he injured his ear after he fell from bed and not because of the alleged attack, Plaintiff testified that he was being spied on by gang members, so he could not relay the truth about the injury. This explanation is nonsensical. Plaintiff claims to have suffered serious injury, yet the only visible injury reported was for a "cosmetic" slit in his ear.

This Court is not convinced that Plaintiff sustained serious injuries after the alleged attack. Plaintiff sought and received medical care while he was incarcerated at EMCF. *See* Medical Record, Doc. [111-3]. The relevant medical record, dated nearly two weeks after the incident, makes no mention of an alleged assault that resulted in bodily injury. This Court concludes Plaintiff has failed to show that he sustained a serious injury as a result of the alleged April 11, 2020 assault. Therefore, he cannot prevail on his claim that Defendant deliberately denied him of medical care,

as he cannot show that Defendant had knowledge of a substantial risk of serious medical harm. Defendant is entitled to summary judgment as to this claim.

## RECOMMENDATION

It is recommended that *Defendant Aswandra Bonner's Motion for Summary Judgment* [111], should be GRANTED, and the case against her should be DISMISSED with prejudice.

### Notice of Right to Object

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party may serve and file written objections to the proposed findings and recommendations within fourteen (14) days after being served a copy of this recommendation. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected, except under grounds of plain error. *Douglass v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1428-29* (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

SO ORDERED this the 31st day of January, 2024.

                                                 /s/ LaKeysha Greer Isaac
                                                 UNITED STATES MAGISTRATE JUDGE